Filed 11/21/25  In re D.G. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re D.G. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. Nos. B344613, B344617 (Super. Ct. Nos. 23JD-00221, 24JD-00091) (San Luis Obispo County) |
| SAN LUIS OBISPO DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>R.D.,<br><br>    Defendant and Appellant. | |

R.D. (Mother) appeals orders of the juvenile court declaring that her minor children, D.G. and K.S., are adoptable, and terminating her parental rights.  (Welf. & Inst. Code, §§ 388,

366.26, subd. (c)(1).)[1]  Among other things, we conclude that the court did not err by failing to state that no exceptions to adoption applied.  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

Mother has four children, including D.G. and K.S., who are dependents of the juvenile court.  On August 18, 2022, law enforcement and San Luis Obispo County Department of Social Services (DSS) responded to the home where Mother, D.G., D.G.'s father G.G. (Father), and two older children (L.L. and L.L.) resided.  Law enforcement found images of child pornography on Father's cell phone and arrested Father.  Mother agreed to participate in drug screening and reside with the children's maternal grandmother.  Mother's drug test results were positive for amphetamine and benzodiazepine.

On May 2, 2023, Father was convicted of possession of child pornography and declared a lifetime registered sex offender.  Despite probation terms prohibiting Father from being alone with D.G., his probation officer found him alone in a motel room with D.G.  The probation officer also found a methamphetamine pipe and a bag of marijuana in the room.  Father's cell phone contained child pornography, and he was arrested again.  When Mother arrived at the motel room, she agreed to participate in drug testing.  Laboratory results later revealed that Mother had positive test results for amphetamine and methamphetamine.

D.G. was placed in protective custody.  On August 24, 2023, DSS filed a dependency petition regarding D.G. pursuant to section 300, subdivision (b) (child at substantial risk of harm due to parents' conduct).  The juvenile court later held a combined

_____

[1] All further statutory references are to the Welfare and Institutions Code.

jurisdiction and disposition hearing, sustained the allegations of the dependency petition, ordered Mother to participate in family reunification services, and ordered D.G. to remain in the custody and care of DSS. The court bypassed reunification services to Father due to his conviction for possession of child pornography and resulting sex offender registration.

The juvenile court held an interim review hearing on February 1, 2024. Mother was then pregnant with K.S. During the prior three months, Mother had positive opiate and marijuana tests, failed to participate in some drug tests, and did not participate in mental health assessment.

On May 29, 2024, the juvenile court held a six-month review hearing. The DSS status review report indicated that Mother had positive drug test results on 10 occasions, and she did not participate in mental health assessment and treatment. Based upon the recommendation of DSS, the court terminated family reunification services to Mother and set a permanent plan hearing. Mother challenged this decision by extraordinary writ. We denied her writ petition. (*R.D. v. Superior Court of San Luis Obispo County* (Sept. 17, 2024, B338134) [nonpub. opn.].)

In May 2024, K.S. was born and detained at birth by DSS because the infant tested positive for fentanyl. DSS filed a dependency petition regarding K.S. pursuant to section 300, subdivisions (b), (g), and (j). DSS also recommended that Mother and Father not receive family reunification services. (§ 361.5, subd. (b)(10), (16).) The juvenile court sustained the allegations of the dependency petition, bypassed reunification services to Mother and Father, and set a permanency plan hearing.

Mother challenged the juvenile court's orders concerning K.S. by extraordinary writ. We denied the writ petition. (*R.D. v. Superior Court* (Nov. 21, 2024, B339559) [nonpub. opn.].)

DSS placed Mother's two sons, L.L. and L.L., with their paternal grandmother who was unable to also care for D.G. and K.S. DSS placed K.S. in a foster home prepared to care for infants exposed to illegal drugs. D.G. was placed in a foster home.

In July 2024, DSS began the process of permanently placing D.G. and K.S. together with maternal relatives in Ohio. The juvenile court approved this placement over Mother's objection, and on November 2, 2024, D.G. and K.S. were placed in Ohio. The maternal relatives intended to adopt D.G. and K.S. and were receptive to continued contact with Mother. DSS planned for monthly FaceTime visits between the four children and in-person visits every three months.

On November 27, 2024, Mother filed a section 388 petition requesting that the juvenile court order reunification services for six months. Specifically, Mother requested a change in previous court orders due to her continued sobriety, mental health assessment, planned mental health therapy, and employment. Mother asserted that she could now provide a safe and loving home for K.S. and D.G.

DSS contested Mother's section 388 petition due to its concerns that her efforts at sobriety and treatment services were nascent. DSS stated that it was in K.S.'s best interests to achieve permanency through adoption and noted that the infant had lived her entire life in foster care; D.G. also had lived a significant part of her young life in foster care.

4

*Combined Sections 388 and 366.26 Hearing*

DSS filed a section 366.26 report recommending that Mother's parental rights be terminated and D.G. and K.S. found adoptable. On February 5 and March 5, 2025, the juvenile court held a combined sections 388 and 366.26 hearing.[2] At the hearing, Mother and two DSS social workers testified, among others.

DSS social worker Adrian Candido testified that he was the case worker for L.L. and L.L. He stated that Mother participated in housing support and completed a residential treatment program. She sometimes missed drug tests or had positive test results from November 1, 2024, through January 27, 2025, however, after completing the program.

Candido stated that D.G. had a strong bond with her brothers, L.L. and L.L. The children visited monthly and maintained contact outside of the in-person visits.

DSS social worker Stacia Burton also testified. She stated that Mother consistently attended all supervised visits with her children who enjoyed the visits but transitioned easily when the visits terminated. Mother had a bond with D.G. but newborn K.S. had not yet developed a bond with Mother.

Mother testified regarding her sobriety, her commitment to remaining sober, and her hoped-for housing. She explained a positive drug test as caused by touching an item in a sober-living home. Mother admitted to using hydrocodone and marijuana, however. She counted June 3, 2024, as her sobriety date from methamphetamine. Mother also described her visits with D.G. and K.S. as joyful and loving and stated that she and the children

---

[2] Father had been released from prison and was placed on probation. He attended the section 366.26 hearing.

had a strong bond. By the second day of the hearing, Mother had secured housing and received her first therapy appointment.

Following the receipt of evidence, the juvenile court heard extensive argument regarding the legal preference for adoption, the exceptions to that preference, and the concepts discussed in *In re Caden C.* (2021) 11 Cal.5th 614. The court then took a recess to review its notes and deliberate. Following deliberation, the court stated its ruling, noting that Mother's credibility suffered when testifying regarding her sobriety. The court referenced the minors' best interests and adopted DSS's and the minors' attorney recommendation that D.G. and K.S. were likely to be adopted. The court then terminated parental rights. It left unmarked the boxes in the written findings and orders that indicated that exceptions to adoption applied.

Mother appeals and challenges the juvenile court's termination order. Father is not a party to this appeal.

*DISCUSSION*

Mother contends that the juvenile court erred by not engaging in the requisite analysis whether the beneficial parental relationship or sibling relationship exceptions to adoption applied. (*In re Caden C.*, *supra*, 11 Cal.5th 614, 630.) Mother also asserts that the court failed to make findings that the minors were adoptable by clear and convincing evidence.

Section 366.26, subdivision (c)(1)(B) requires the juvenile court to terminate parental rights if it finds by clear and convincing evidence that a child is likely to be adopted, unless the court finds a compelling reason for determining that termination would be detrimental to the child due to an enumerated statutory exception. (*In re Caden C.*, *supra*, 11 Cal.5th 614, 629.) The beneficial parental relationship exception of section 366.26,

subdivision (c)(1)(B)(i) requires a showing by a preponderance of the evidence that the parent has regularly visited the child, that the child would benefit from continuing the relationship, and that terminating the relationship would be detrimental to the child. "[T]he exception applies in situations where a child cannot be in a parent's custody but where severing the child's relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child." (*Caden C.*, at p. 630.)

Application of the beneficial parental relationship exception rests upon factual determinations and is reviewed for substantial evidence. (*In re Caden C.*, *supra*, 11 Cal.5th 614, 630.) The "ultimate decision" that termination would be harmful, however, is discretionary and reviewed for an abuse of discretion. (*Ibid.*) The parent bears the burden of establishing the three elements of the exception: 1) regular visitation and contact as permitted; 2) a relationship, the continuation of which would benefit the child; and 3) termination of parental rights would be detrimental to the child. (*Id.* at pp. 631, 636.) Ultimately, the juvenile court must decide "whether the harm from severing the child's relationship with the parent outweighs the benefit to the child of placement in a new adoptive home." (*Id.* at p. 632.) What the court must determine "is how the child would be affected by losing the parental relationship – in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Id.* at p. 633.) There is no requirement that the juvenile court make specific findings regarding each element of the exception. (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156.)

A second exception to the statutory preference for adoption exists where adoption and termination of parental rights would

7

substantially interfere with an important sibling relationship. This exception considers the nature and extent of the sibling relationship, including whether the child was raised with a sibling in the same home, the existence of close and strong bonds with the sibling, and whether ongoing contact is in the child's best interests.  (§ 366.26, subd. (c)(1)(B)(v).)  In considering the exception, the juvenile court must balance the beneficial interest of the child in maintaining the sibling relationship against the security and belonging adoption and a new home would provide.  (*In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 783.)

Here the juvenile court terminated parental rights and ordered adoption as the permanent plan.  This decision necessarily means that the court did not find any exceptions to adoption applicable.  The parental benefit and sibling relationship exceptions were argued by counsel.  The court then recessed before returning and announcing its decision.  There is no requirement that the juvenile court in deciding that the exceptions are inapplicable must recite specific findings relative to its conclusions.  (*In re A.L.*, *supra*, 73 Cal.App.5th 1131, 1156.) We presume that the court considered all the pertinent matters presented to it.  (*Ibid.*)  "Thus, although a statement by the trial court of its findings (or reasons) for its decision is helpful in conducting appellate review, it was not a legal requirement in this instance."  (*Ibid.*)

Moreover, Mother did not meet her evidentiary burden to establish that her relationship with D.G. and K.S. was sufficiently compelling to outweigh the legal preference for adoption.  Although Mother had positive, appropriate, and loving visits with the children, K.S. was an infant who had never lived with Mother.  D.G. had also lived in foster care for one-third of

8

her life.  (*In re Caden C.*, *supra*, 11 Cal.5th 614, 632.)  K.S. was receiving specialized care to deal with in utero drug exposure. She also easily separated from Mother following visits.  To overcome the preference for adoption and avoid termination of parental rights, the parent must show that severing the natural parent-child relationship would deprive the child of a substantial, positive, emotional attachment such that the child would be greatly harmed.  (*In re G.H.* (2022) 84 Cal.App.5th 15, 25.)  The emotional bond here is not the substantial, positive, emotional attachment establishing the exception to adoption.

Moreover, substantial evidence exists that the sibling exception to adoption was inapplicable.  Newborn K.S. never lived with L.L. and L.L.  D.G. lived a significant part of her young life in a foster home.  The foster parents and DSS facilitated in-person visits and video contact with L.L. and L.L. to continue the siblings' relationship.

The juvenile court did not abuse its discretion by concluding that termination of Mother's parental rights would not be detrimental to K.S. and D.G.  The "exceptional circumstances" that would allow the juvenile court to circumvent adoption were not present here. (*In re Caden C.*, *supra*, 11 Cal.5th 614, 631.)

The orders are affirmed.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.

We concur:


YEGAN, J.          CODY, J.

9

Matthew G. Guerrero, Judge

Superior Court County of San Luis Obispo

_____

Melissa A. Chaitin, under appointment by the Court of Appeal, for Defendant and Appellant.

Jon Ansolabehere, County Counsel, Vincent M. Uberti, Deputy County Counsel, for Plaintiff and Respondent.